PEOPLE v KEMP

Docket No. 151691. Submitted September 14, 1993, at Detroit. Decided November 1, 1993, at 9:45 A.M.

Lamon A. Kemp was convicted following a bench trial in the Recorder's Court of Detroit, Denise Page Hood, J., of second-degree murder and possession of a firearm during the commission of a felony. The defendant claimed at trial that he should be absolved of all criminal responsibility because he had acted in self-defense or, in the alternative, that he had established a claim of imperfect self-defense and was guilty of manslaughter rather than second-degree murder. The court rejected the claim of self-defense. The defendant appealed.

The Court of Appeals *held:*

The case is remanded to the trial court for further findings of fact and conclusions of law concerning the applicability of the theory of imperfect self-defense. Jurisdiction is retained by the Court of Appeals.

REILLY, P.J., stated that the trial court's rejection of the defendant's claim of self-defense was supported by sufficient evidence on the record. However, the trial court erred in failing to address and make sufficient findings of fact with respect to the defendant's claim of imperfect self-defense. On remand, the trial court in its consideration of the claim of imperfect self-defense should resolve the issues whether the defendant used excessive force and what the defendant's state of mind was at the time of initiating the confrontation with the victim. A claim of imperfect self-defense may not be maintained where excessive force was used or the confrontation was initiated with the intent to kill or do great bodily harm.

MICHAEL J. KELLY, J., concurring, stated that, while it would have been preferable to affirm the conviction and sentence on the basis of the implied rejection of defendant's self-defense claim, remanding the case to the trial court for consideration of the claim of imperfect self-defense is appropriate.

Remanded.

CONNOR, J., dissenting in part, stated that discussing the case in terms of imperfect self-defense is counterproductive and that on remand the court should direct its findings of fact and

conclusions of law toward whether the defendant committed the crime under the influence of passion or in the heat of hot blood produced by adequate provocation so as to reduce his offense to voluntary manslaughter.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for the defendant on appeal.

Before: REILLY, P.J., and MICHAEL J. KELLY, and CONNOR, JJ.

REILLY, P.J. Defendant was convicted, after a bench trial, of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to a term of fourteen to twenty-five years of imprisonment for the murder conviction and a consecutive term of two years for the felony-firearm conviction. Defendant now appeals as of right. We remand for further proceedings.

Defendant's conviction arose out of the shooting death of Antoinette Compton. Ms. Compton was shot in a house owned by defendant's father where she sold cocaine for both defendant and his father. About four days before the shooting, defendant and the victim fought over missing money. In his statement to the police, defendant said that when he asked the victim about the money, she started "talking smart" and he hit her.

According to defendant's statement, on the day of the shooting someone called defendant's mother's house and made threats against defendant.

Defendant believed that the victim was the person making the threats because of their prior argument. Upon learning about the threats, defendant and two of his cousins went to the house where the victim was staying. Defendant was armed with a semiautomatic rifle. Defendant's cousin, Jamal, was also armed with a rifle.

When defendant arrived at the house, the victim came to the door and opened it. According to defendant, the victim said, "You should have been dead motherfucker." Defendant noticed that the victim had a gun in her hand. The victim slammed the door shut as defendant approached the house. He then kicked in the door and went inside the house. Defendant stated that the victim was standing at the top of the stairs with a gun in her hand.[1] Defendant said that he fired at the victim after she cocked her gun. Defendant fired about ten shots and then left the house and shot at the windows from the sidewalk. His cousin, Jamal, also shot at the windows.

Defense counsel argued that defendant shot the victim in self-defense. Counsel asserted that although defendant was the initial aggressor, he had decided not to take any action and fired only to protect himself. The trial court found that defendant caused the victim's death and that he acted with the requisite intent for second-degree murder. With regard to the issue of self-defense, the court stated:

> I'm aware also that the prosecutor . . . must prove a lack of self-defense. And I think there is some proving of that by the fact that even though the Court is not satisfied of premeditation, that there is some going to this home with these rather

---

[1] The victim was apparently staying in the upper portion of the house.

large guns and that there is a kicking open of this door, no intent to peacefully enter the premises in any way.

There is also an issue I think about the amount of force that you can use to be necessary to protect yourself at the time. And I think it's very clear that there is some allegation by at least one of the witnesses that there was a popping sound and then some other gunfire. That's not borne out by all the other witnesses and there is no physical evidence of that although there does not certainly have to be physical evidence of it. And then there is, quite frankly, a lot of unloading of gunfire it appears to the Court . . . .

I'm satisfied that it's not a threat of minor injury. I'm also satisfied that Mr. Lamon Kemp probably reasonably and honestly thought he was in danger of being seriously injured by some gunfire since his statement says that at least the gun was being raised to be pointed at him. I don't know that that might not have been because he was standing there with that big rifle and whether or not the amount of force that he used back was as much as if he were acting in self-defense was reasonably necessary to protect himself from being killed or seriously injured.

I don't think that it's self-defense on the part of Mr. Lamon Kemp. I think the prosecution has proved that by showing that the way he entered, that he went to the home with the gun and that it's not clear that any shot was fired although the person who had control it seems of the premises may have had a gun. And therefore I find him guilty of murder in the second degree and felony firearm.

Defendant argues on appeal that the evidence presented at trial was insufficient to support his conviction of second-degree murder. He asserts that the court erred in not determining that he acted in self-defense or that he at least had a claim for imperfect self-defense that would reduce

the crime from murder to voluntary manslaughter.

This Court reviews a challenge to the sufficiency of the evidence at a bench trial by viewing the evidence presented in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Petrella,* 424 Mich 221, 268-270; 380 NW2d 11 (1985).

When the right to a trial by jury has been waived by a defendant, the trial court, sitting as factfinder, must make specific findings of fact and state its conclusions of law. MCR 6.403; *People v Jackson,* 390 Mich 621, 627; 212 NW2d 918 (1973); *People v Legg,* 197 Mich App 131, 134; 494 NW2d 797 (1992). Factual findings are sufficient as long as it appears that the trial court was aware of the issues and correctly applied the law. *Id.*

To establish the crime of second-degree murder, it must be determined that the defendant caused the death of the victim and that the killing was done with malice and without justification. *People v Harris,* 190 Mich App 652, 659; 476 NW2d 767 (1991). Malice is the intent to kill, the intent to do great bodily harm, or the intent to create a high risk of death or great bodily harm with knowledge that death or great bodily harm will be the probable result. Malice may be inferred from the facts and circumstances of the killing. *Id.*

In Michigan, the killing of another in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm. *People v Heflin,* 434 Mich 482, 502; 456 NW2d 10 (1990). A defendant is not entitled to use any more force than is necessary to defend himself. *People v Deason,* 148 Mich App 27,

31; 384 NW2d 72 (1985). Furthermore, the defense is not available when a defendant is the aggressor unless he withdraws from any further encounter with the victim and communicates such withdrawal to the victim. *Id.; People v Kerley,* 95 Mich App 74, 82; 289 NW2d 883 (1980); *People v Peoples,* 75 Mich App 616, 620-624; 255 NW2d 707 (1977).

In this case it is clear that defendant was not entitled to prevail on a "perfect" self-defense theory because he initiated and pursued the confrontation with the victim. At no time did he withdraw or attempt to withdraw from the confrontation. There was sufficient evidence on the record to support the trial court's finding that defendant was not acting in self-defense.

The question remains whether defendant was entitled to prevail on a theory of "imperfect" self-defense. Imperfect self-defense is a qualified defense that can mitigate second-degree murder to voluntary manslaughter. *People v Butler,* 193 Mich App 63, 67; 483 NW2d 430 (1992). Where imperfect self-defense is applicable, it serves as a method of negating the element of malice in a murder charge. *Heflin, supra* at 509. Although the Michigan Supreme Court has not yet considered the viability of the theory of imperfect self-defense, panels of this Court have recognized the doctrine where a defendant would have been entitled to invoke the theory of self-defense had he not been the initial aggressor. *Heflin, supra; Butler, supra; People v Amos,* 163 Mich App 50, 57; 414 NW2d 147 (1987).

Defendant asserts that he should have been convicted of voluntary manslaughter because, had he not been the initial aggressor, he would have been entitled to act in self-defense because he honestly and reasonably believed his life was in

imminent danger or that there was a threat of
serious bodily harm and he did not use any more
force than was necessary to defend himself. How-
ever, we believe that the inquiry regarding the
applicability of the doctrine of imperfect self-de-
fense requires more than just a determination
whether defendant was the initial aggressor. In
determining whether an initial aggressor is enti-
tled to a claim of imperfect self-defense, the focus
is on "*the intent with which the accused brought
on the quarrel or difficulty.*" *State v Partlow,* 90
Mo 608, 617; 4 SW 14 (1887). See generally Perkins
& Boyce, Criminal Law (3d ed), pp 1137-1143.

> "[I]f one takes life, though in defense of his own
> life, in a quarrel which he himself has commenced
> with the intent to take life or inflict grievous
> bodily harm, the jeopardy in which he has been
> placed by the act of his antagonist constitutes no
> defense whatever, but he is guilty of murder. But
> if he commenced the quarrel with no intent to
> take life or inflict grievous bodily harm, then he is
> not acquitted of all responsibility for the affray
> which arose from his own act, but his offense is
> reduced from murder to manslaughter." [*State v
> Crisp,* 170 NC 785, 793; 87 SE 511 (1916), quoting
> *People v Filippelli,* 173 NY 509, 517-518; 66 NE
> 402 (1903).]

See also *People v Pursley,* 302 Ill 62, 73-75; 134
NE 128 (1922); *State v Sanders,* 556 SW2d 75, 76
(Mo App, 1977); *State v Norris,* 303 NC 526; 279
SE2d 570 (1981). Thus, defendant in this case is
not entitled to invoke the doctrine of imperfect
self-defense to mitigate his crime to manslaughter
if the circumstances surrounding the incident indi-
cate that he initiated the confrontation between
himself and the victim with the intent to kill or do
great bodily harm.

We have reviewed the findings of the trial court and conclude that the court did not address the issue of imperfect self-defense. Although the court found that defendant honestly and reasonably believed his life was in danger, the court did not resolve the issue whether defendant used more force than was necessary to defend himself. Under Michigan law, defendant would not be entitled to claim imperfect self-defense if he acted with excessive force.[2] Furthermore, the court did not address the issue of defendant's state of mind at the time of initiating the confrontation. Defendant is not entitled to imperfect self-defense if he initiated the confrontation with the intent to kill or do great bodily harm.

On the basis of the foregoing, we remand this matter to the trial court for further findings of fact and conclusions of law concerning the applicability of the imperfect self-defense theory to this case.

Remanded for proceedings consistent with this opinion. We retain jurisdiction.

MICHAEL J. KELLY, J. *(concurring)*. I would have preferred to affirm the conviction and sentence on the basis of the implied rejection of defendant's self-defense claim, however labeled. I concur in remanding the case to permit the trial court to address the claim of "imperfect self-defense." The defendant is entitled to an express, articulated treatment of that slippery and undeveloped doctrine by the trial court, because his appeal of that issue may attract the attention of the Supreme Court.

---

[2] As we have previously discussed, the Court of Appeals has recognized imperfect self-defense only where the defendant would have been entitled to self-defense had he not been the initial aggressor. One who uses more force than is necessary is not entitled to assert self-defense.

CONNOR, J. *(dissenting in part).* I agree that this case needs to be remanded for further fact finding.

The trial court found that defendant had murdered without premeditation and had not acted in self-defense. Both findings are supported by the record, and I affirm both findings. However, the trial court made no findings regarding defendant's claim that his crime should be reduced to manslaughter.

Defendant claims that he did not go to the house intending to kill his victim or cause her great bodily harm, nor did he intend, by kicking the door in while carrying an assault rifle, to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result of doing so. Instead, he claims that his desire to kill his victim was born of the moment. Confronted with a woman about to kill him, he claims to have acted rashly. Defendant calls his claim "imperfect self-defense."

Up to now, in Michigan, if a person takes a life in lawful self-defense his actions are excused and he is not guilty of any crime. CJI2d 7.15(1). However, a person who started an assault on another with a deadly weapon cannot claim that he acted in self-defense unless he genuinely stopped his assault and clearly let the other person know he wanted to make peace. CJI2d 7.18.

A majority of the jurisdictions that recognize imperfect self-defense use it as a method of negating the malice element in a murder charge so as to mitigate murder to voluntary manslaughter. *People v Heflin,* 434 Mich 482, 509, 547; 456 NW2d 10 (1990). The claim of imperfect self-defense arises when a defendant kills another by an act that could be found to have been committed in self-defense except that the defendant was the initial aggressor or used excessive force. *Id.* at 509.

While some appellate courts have given the imperfect self-defense doctrine a cursory examination, before finding the theory inapplicable to the facts at hand, the Michigan Supreme Court has neither adopted nor analyzed the doctrine thus far. *Id.* at 508.

I think discussing this case in terms of imperfect self-defense is counterproductive. This decision may be perceived as breaking new ground, as creating a new route to a verdict of voluntary manslaughter, when, in fact, we are only following the longstanding law of voluntary manslaughter in Michigan. See *Maher v People,* 10 Mich 212 (1862).

In Michigan, the crime of murder is reduced to manslaughter if committed "under the influence of passion or in the heat of blood produced by adequate provocation." CJI 16:4:02(1). If defendant's desire to kill his victim was actually born of the moment, if it was the result of such provocation that would cause a reasonable person to kill in the heat of passion, then his crime is manslaughter, not murder. See *People v Younger,* 380 Mich 678, 681-682; 158 NW2d 493 (1968).

I do not believe that the theory of imperfect self-defense adds anything to Michigan's traditional notions of self-defense or voluntary manslaughter, and I would not require the trial court to apply the theory of imperfect self-defense in this case. Whether the doctrine should be adopted in Michigan is best left to the Legislature or the Supreme Court.[1]

---

[1] Moreover, I do not believe the doctrine as applied in other states, but for Missouri, necessarily requires a determination of a defendant's state of mind at the time he initiated the confrontation. Malice aforethought may be controlling when considering whether the offense was committed in the heat of passion. However, imperfect self-defense relates to the defendant's state of mind at the time of the killing. Malice aforethought would be merely one factor to consider when determining actual malice.

I would remand for additional findings of fact and conclusions of law concerning whether defendant committed the crime under the influence of passion or in the heat of blood produced by adequate provocation, so as to reduce his offense to voluntary manslaughter.