# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SEAN ANDRE-GEORGE CAMPBELL,

        Defendant-Appellant.

UNPUBLISHED
October 8, 2015

No. 321917
Wayne Circuit Court
LC No. 13-010047-FH

Before: BORRELLO, P.J., and JANSEN and OWENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to one day in jail, time served, for the felonious assault conviction and two years' imprisonment for the felony-firearm conviction. We affirm.

This case arises from an altercation between defendant and Brandon Mellin at a gas station in Melvindale, Michigan. Defendant and Mellin exchanged words when the latter brushed past defendant on his way out of the gas station, and the argument quickly escalated. Defendant hit Mellin in the face, then drew a handgun from the waistband of his pants and pushed the gun barrel into Mellin's face.

## I. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecutor improperly influenced the jury by arguing facts not in evidence, vouching for Mellin's credibility, and appealing to the jurors' sense of civic duty, thereby depriving him of a fair and impartial trial. We disagree.

A defendant must "contemporaneously object and request a curative instruction" to preserve an issue of prosecutorial misconduct for appellate review. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defense counsel did not object to any of the prosecutor's comments that defendant complains of on appeal. Thus, the issue is not preserved for appellate review. See *id*.

We review unpreserved claims of prosecutorial error for plain error affecting substantial rights. *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014). To show plain error, a defendant must establish that "1) error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error affects the defendant's substantial rights if it prejudiced the defendant by affecting the outcome of the trial. *Id*. Even if a defendant can satisfy all three requirements, appellate reversal is warranted only when the plain error resulted in the conviction of an actually innocent defendant or when the error seriously affected the "fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763 (citation and quotation marks omitted).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Generally, however, a court gives a prosecutor "great latitude regarding his or her arguments and conduct at trial." *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). In determining whether a prosecutor's comments were improper, we "evaluate the prosecutor's remarks in context, in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). A prosecutor need not confine his or her arguments to the blandest terms possible. *Bennett*, 290 Mich App at 475. " '[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument.' " *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001) (citation omitted; alteration in original). Finally, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements[,]" *Seals*, 285 Mich App at 22, and a jury is presumed to follow the trial court's instructions, *People v Wood*, 307 Mich App 485, 506; 862 NW2d 7 (2014).

## A. ARGUING FACTS NOT IN EVIDENCE

Defendant first contends that the prosecutor committed misconduct by stating that defendant shot Mellin and by arguing, without the benefit of supporting lay or expert testimony, that Mellin would have dropped his gloves if he intended to fight defendant.

A prosecutor is "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to [his or her] theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). A prosecutor, however, may not make a statement of fact to the jury that is unsupported by evidence presented at trial, nor may the prosecutor argue the effect of testimony that was not entered into evidence. *Id*. at 241. "It is well known that factfinders may and should use their own common sense and everyday experience in evaluating evidence." *People v Simon*, 189 Mich App 565, 567; 473 NW2d 785 (1991).

During his closing argument, the prosecutor discussed the elements of the offenses with which defendant was charged. Regarding the charge of felonious assault, the prosecutor said,

> Did the [d]efendant, Mr. Campbell, either attempt to commit a battery on Brandon Mellin or did [sic] an act that would cause a reasonable person to fear an immediate battery? Battery is a harmful or offensive touching.

I think we would all agree that being shot is a harmful or offensive touching. I think we'd all agree that being punched in the face with a gun would be a harmful or offensive touching.

Contrary to defendant's argument on appeal, the prosecutor was not actually arguing that defendant shot Mellin. There was no question that defendant's conduct was restricted to punching Mellin and then shoving the gun in Mellin's face, two actions that the prosecutor referenced time and again throughout the trial and that the jurors had seen for themselves numerous times on the gas station video. Imprecise though his language may have been, the prosecutor was simply remarking that it was reasonable for Mellin to *fear* being shot, and thus, that defendant intended to put Mellin in reasonable apprehension of an immediate battery. See MCL 750.82; *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (listing the elements of felonious assault as "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery"). Defendant's own admission that he intended to make Mellin think that defendant would shoot him if he failed to move away from the door buttresses this conclusion, as does the fact that the prosecutor highlighted defendant's admission immediately after he discussed harmful or offensive touching. Thus, rather than arguing a fact not in evidence, the prosecutor was simply drawing a reasonable inference—that defendant intended to make Mellin fear being shot—from facts firmly in evidence. This is a permissible strategy during closing argument. See *Unger*, 278 Mich App at 236, 241.

Later in his closing argument, the prosecutor stated, "But everybody knows if you're going to fight somebody and you're holding gloves, not even with balled fists in your hands [sic], what's the first thing you're going to do before you fight somebody? You drop your gloves. First thing you do in a fight is you protect your face." The prosecutor was merely calling on the jurors to use their common sense and everyday experience to draw an inference that Mellin did not make an aggressive move toward defendant, not that some ironclad rule existed whereby one only fights after dropping one's gloves. See *Simon*, 189 Mich App at 567. Additionally, the video showed, and defendant testified, that Mellin never dropped his gloves during the confrontation, entitling the prosecutor to argue a reasonable inference based on that fact. See *Unger*, 278 Mich App at 236, 241.

Moreover, the trial court instructed the jury that the lawyers' statements, arguments, and commentary were not evidence. Thus, assuming that the prosecutor's comments were somehow improper, this curative instruction was sufficient to cure any prejudicial effect, and defendant fails to rebut the presumption that the jury followed the court's instruction. See *Wood*, 307 Mich App at 506; *Seals*, 285 Mich App at 22. Accordingly, defendant fails to establish plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## B. VOUCHING FOR MELLIN'S CREDIBILITY

"A prosecutor may not vouch for the credibility of a witness by implying that the prosecution has some special knowledge that the witness is testifying truthfully." *People v Rodriguez*, 251 Mich App 10, 31; 650 NW2d 96 (2002). "A prosecutor may, however, argue from the facts and testimony that the witnesses are credible or worthy of belief." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). During closing argument, a prosecutor

may comment on the credibility of a prosecution witness "especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

The comments the prosecutor made about Mellin during his closing argument did not constitute improper vouching. At no point did the prosecutor imply that he possessed special knowledge of Mellin's honesty. See *Rodriguez*, 251 Mich App at 31. Instead, he pointed out that Mellin, despite his personality quirks and medical issues, was credible or worthy of belief based on his consistent and candid testimony. See *Dobek*, 274 Mich App at 66. This was particularly appropriate because Mellin's account of the confrontation differed substantially from defendant's account and because the question of defendant's guilt depended on which of them the jury believed. See *Thomas*, 260 Mich App at 455.

Additionally, as noted earlier, the trial court instructed the jurors that the lawyers' statements, arguments, and commentary were not evidence. The court also instructed the jurors that "You must decide which witnesses you believe and how important you think their testimony is" and exhorted them to rely on their own common sense and everyday experience when evaluating witness credibility. This was sufficient to cure any potential prejudicial effect, and defendant again fails to rebut the presumption that the jury followed the court's instruction. See *Wood*, 307 Mich App at 506; *Seals*, 285 Mich App at 22. Accordingly, defendant fails to establish plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## C. APPEALING TO A SENSE OF CIVIC DUTY

"[I]t is improper for a prosecutor to appeal to the jury's civic duty by injecting issues broader than guilt or innocence or encouraging jurors to suspend their powers of judgment." *Thomas,* 260 Mich App at 455-456. It is proper, however, for a prosecutor to ask a jury to convict a defendant on the basis of evidence produced at trial. *People v Bahoda*, 448 Mich 261, 284-285; 531 NW2d 659 (1995).

Defendant argues that the prosecutor made an improper civic-duty appeal when he urged the jury to find defendant guilty on the basis of a belief in responsible gun ownership. This Court, however, does not review a prosecutor's comments in isolation, but evaluates them in context and in light of the arguments and evidence. See *Seals*, 285 Mich App at 22.

Throughout the case, the prosecutor employed the themes of accountability and taking responsibility for one's actions, as did defense counsel. Thus, the prosecutor was not encouraging the jury to convict defendant based on the abstract principles that he was generally an irresponsible gun owner and that the jury should encourage responsible gun ownership through a guilty verdict. Rather, the prosecutor was urging the jurors to use their reason and common sense to find beyond a reasonable doubt that defendant committed the charged offenses, notwithstanding the fact that he possessed a valid CPL. His argument was specifically premised on the video, the testimony, and the reasonable inference that defendant acted as the aggressor, rather than in self-defense, *on that particular occasion*. See *Bahoda*, 448 Mich at 284-285. Accordingly, the prosecutor did not make an improper civic-duty argument because he neither encouraged the jurors to suspend their powers of judgment nor injected issues broader than defendant's guilt or innocence. See *Thomas,* 260 Mich App at 455-456.

Furthermore, as with the other comments of which defendant complains, the trial court's instructions cured any potential prejudicial effect. See *Seals*, 285 Mich App at 22. The trial judge instructed the jurors that they were to rely solely on the evidence in making their determination of guilt, that the attorneys' statements and arguments were not evidence, that they were to employ their own reason and common sense, and that they were not to be swayed by bias or prejudice. Defendant contends, without support, that these instructions were insufficient to cure the prejudicial effect of the prosecutor's statements, but he again fails to rebut the presumption that the jury indeed relied upon the instructions. See *Wood*, 307 Mich App at 506. Consequently, defendant again fails to establish plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant does not contend that the prosecution failed to prove beyond a reasonable doubt the elements of the offenses with which he was charged, but, instead, that the prosecution presented insufficient evidence to refute his self-defense claim. We disagree.

We review de novo a challenge to the sufficiency of the evidence in a jury trial, viewing the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the prosecution proved beyond a reasonable doubt the essential elements of the crime. *Gaines*, 306 Mich App at 296. Moreover, this Court will not interfere with the fact-finder's role of determining the weight of evidence or the credibility of witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

At common law, self-defense has three elements: (1) the defendant honestly and reasonably believed that he or she was in imminent danger; (2) the danger was serious bodily harm, a sexual assault, or death; and (3) the defendant honestly and reasonably believed that his or her actions were necessary to prevent the imminent danger. *People v Heflin*, 434 Mich 482, 502, 508-509; 456 NW2d 10 (1990); *People v Guarjado*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013). In a self-defense context, this Court has held that reasonableness "depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011).

The Self–Defense Act, MCL 780.971 *et seq.*, "codified the circumstances in which a person may use self-defense." *Guarjado*, 300 Mich App at 35 (citation and quotation marks omitted). MCL 780.972(2), which applies to the use of nondeadly force in self-defense, provides:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

A defendant charged with felony-firearm may raise self-defense under the SDA. *Guarjado*, 300 Mich App at 40.

A person who uses excessive force or acts as the initial aggressor does not act in justifiable self-defense. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010); see also *Guarjado*, 300 Mich App at 35. An aggressor may still claim self-defense if he or she "withdraws from any further encounter with the victim and communicates such withdrawal to the victim." *People v Kemp*, 202 Mich App 318, 323; 508 NW2d 184 (1993), abrogated on other grounds by *People v Reese*, 491 Mich 127 (2012). Once a defendant claims that he or she acted in self-defense, the prosecution bears the burden of disproving the defense beyond a reasonable doubt. *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993).

Defendant testified on cross-examination that he feared serious injury or death when Mellin struck an alleged martial arts pose. The surveillance video reveals, however, that Mellin's gestures appeared to be more bizarre or humorous than threatening or indicative of a background in any known form of martial art. Mellin never touched defendant, nor did he raise his hands, other than to hit himself emphatically in the chest. And the only time that Mellin took a step toward defendant was immediately after defendant hit him in the face. Additionally, the video shows that Mellin was almost completely outside when defendant took several steps toward him and punched him. And despite his alleged fear, defendant twice turned away to talk to other onlookers, even after hitting and pulling the gun on Mellin. Mellin may have been cursing at defendant and challenging him to fight throughout the encounter, but the video evidence belies defendant's claim that he honestly and reasonably feared serious injury or death at Mellin's hands. Thus, the jury could reasonably have concluded that he did not act in self-defense. See MCL 780.972(2); *Guarjado*, 300 Mich App at 35.

Furthermore, defendant himself testified that he pulled the gun in an attempt to get Mellin to move away from the door so that defendant could leave the situation. But Mellin was only standing in front of one of the gas station's doors, leaving another available, and defendant's testimony that he repeatedly asked Mellin to "move from in front of the door, let me out" seems unlikely, given that defendant had not yet paid for the drink he held in his hand. Defendant further testified that he punched Mellin "[t]o try to get him off balance and get out of the gas station. . . . To remove him from in front of the door. I figured if I got him off balance I can get out of the gas station cause he wasn't letting anyone out." Yet when defendant hit Mellin, the next thing he did was step further *into* the store and pull out his gun. And after pushing the gun into Mellin's face, defendant still chose not to exit, but turned away from Mellin to talk to another customer and then eventually paid for his drink. Mellin left the gas station first. Defendant also testified that he did not know what Mellin might do after the latter failed to back down when defendant showed him the gun, that he intended to make Mellin think he would shoot him if Mellin failed to move away from the door, and that he pulled the gun out to defuse the situation. Even if the jury credited all of these explanations from defendant, none of them speaks to an honest and reasonable fear of imminent death or serious bodily harm. *Guarjado*, 300 Mich App at 35.

Moreover, the jury could have concluded that defendant acted as the initial aggressor in the encounter. Mellin may have initiated contact by brushing past defendant in the gas station—which led to their argument—but the surveillance video shows that the contact was extremely slight. Mellin also took clear efforts to get out of defendant's way when defendant first entered the gas station and walked to the drink cooler, then again when defendant moved past Mellin to stand in line. Given that defendant stepped toward Mellin and hit him in the face when Mellin

-6-

was already partly outside the station door, the jury could reasonably have concluded that defendant was the aggressor, and there is no evidence suggesting that defendant withdrew and notified Mellin of the withdrawal. See *Dupree*, 486 Mich at 707; *Kemp*, 202 Mich App at 323.

The jurors heard testimony from defendant and Mellin, and they watched the video numerous times throughout the trial. The trial court also instructed them on self-defense, and we presume that they followed their instructions and properly considered the defense. *People v Abraham*, 256 Mich App 265, 278-279; 662 NW2d 836 (2003). Having considered all of the evidence, the jury simply found the prosecution's version more credible than defendant's, and we will not interfere in the jury's role of determining witness credibility. *Eisen*, 296 Mich App at 331. Accordingly, viewed in a light most favorable to the prosecution, ample evidence existed to prove beyond a reasonable doubt that defendant failed to act in self-defense. See *Gaines*, 306 Mich App at 296; *Fortson*, 202 Mich App at 20.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen
/s/ Donald S. Owens