PEOPLE v DEASON

Docket No. 79839. Submitted October 3, 1985, at Grand Rapids.—
  Decided December 17, 1985.

Defendant, Dan Deason, was convicted of second-degree murder,
  Calhoun Circuit Court, James C. Kingsley, J. Defendant's de-
  fense was self-defense. Defendant appealed. *Held:*

  1. Defendant requested an instruction on imperfect self-de-
  fense. Imperfect self-defense is a qualified defense which can
  mitigate an act of second-degree murder to voluntary man-
  slaughter and has been invoked elsewhere than in Michigan
  where a defense of self-defense fails because the defendant was
  the aggressor, or maintained an unreasonable belief of danger,
  or reacted with an unreasonable amount of force. In Michigan,
  the doctrine has only been applied where the defendant would
  have had a right to self-defense but for his actions as the initial
  aggressor. Imperfect self-defense does not apply where the
  defendant was threatened with less than serious bodily harm.

  2. The court did not err in failing to instruct the jury that it
  must find an absence of provocation beyond a reasonable doubt
  in order to convict. Provocation or the absence of provocation is
  not an actual element of the crime of second-degree murder or
  manslaughter which the prosecution must prove beyond a
  reasonable doubt.

  3. The examining magistrate did not abuse his discretion in
  failing to quash the information and in binding defendant over
  for trial.

  4. The evidence was sufficient to sustain defendant's convic-
  tion.

  5. The prosecution introduced evidence of defendant's prear-
  rest statements concerning the stabbing of the deceased. Evi-

REFERENCES

Am Jur 2d, Appeal and Error §§ 882, 883.
Am Jur 2d, Criminal Law §§ 411 *et seq.*
Am Jur 2d, Evidence §§ 336 *et seq.*
Accused's right, in homicide case, to have jury instructed as to both
  unintentional shooting and self-defense. 15 ALR4th 983.
Construction of statutes or rules making mandatory the use of
  pattern or uniform approved jury instructions. 49 ALR3d 128.

dence of defendant's statements and demeanor shortly after the stabbing were admissible as part of the res gestae.

6. The court properly allowed rebuttal of evidence that defendant had a neck injury and had been choked.

7. The prosecution improperly introduced evidence of the victim's character into its case-in-chief in anticipation of defense testimony of the violent character of the victim. However, this error did not result in manifest injustice.

8. It was not improper for the prosecution to call a police detective as a rebuttal witness to testify to an alleged prior inconsistent statement of defense witness Thelma Dantley about the victim's assaultive character. Dantley testified on direct examination by defense counsel that the victim had a reputation as a troublemaker. On cross-examination, she testified that she did not tell Detective Gunderson that she had never known the victim to hurt anyone or be assaultive. The prosecution called Detective Gunderson in rebuttal to impeach Dantley's testimony. Gunderson testified that he talked to Dantley about a week after the incident and she told him that to her knowledge the victim was not assaultive. The victim's reputation as a peaceful person was relevant to the issue of self-defense raised by the defendant. The prosecution did not attempt to inject a new issue into the case. Accordingly, the prosecution was free to introduce evidence of the prior inconsistent statement to impeach Dantley's testimony at trial.

Affirmed.

1. CRIMINAL LAW — SELF-DEFENSE — JURY INSTRUCTIONS.

The test for determining whether a defendant has acted in lawful self-defense is whether 1) defendant honestly believed that he was in danger, 2) the degree of danger was of serious bodily harm or death, and 3) the action taken by the defendant appeared at the time to be immediately necessary, *i.e.*, defendant is only entitled to use the amount of force necessary to defend himself (CJI 7:9:01).

2. HOMICIDE — IMPERFECT SELF-DEFENSE — SECOND-DEGREE MURDER — MANSLAUGHTER.

Imperfect self-defense is a qualified defense which can mitigate an act of second-degree murder to voluntary manslaughter and has been invoked elsewhere than in Michigan where a defense of self-defense fails because the defendant was the aggressor, or maintained an unreasonable belief of danger, or reacted with an unreasonable amount of force; in Michigan, the doctrine has only been applied where the defendant would have had a right to self-defense but for his actions as the initial aggressor.

3. HOMICIDE — SECOND-DEGREE MURDER — MANSLAUGHTER — PROVO-
   CATION.

   Provocation or the absence of provocation is not an actual ele-
   ment of the crime of second-degree murder or manslaughter
   which the prosecution must prove beyond a reasonable doubt.

4. CRIMINAL LAW — PRELIMINARY EXAMINATION — APPEAL.

   The statutory duty of the magistrate at a preliminary examina-
   tion is to bind the defendant over for trial if it appears at the
   conclusion of the preliminary examination that a felony has
   been committed and there is probable cause to believe that the
   defendant committed it; he is not required to find the guilt of
   the defendant established beyond a reasonable doubt, but there
   must be evidence on each element of the crime charged or
   evidence from which those elements may be inferred; the
   magistrate's decision should only be reversed where it appears
   on the record that there has been an abuse of discretion (MCL
   766.13; MSA 28.931).

5. CRIMINAL LAW — SELF-DEFENSE — BURDEN OF PROOF.

   The burden, when a defendant introduces evidence of self-de-
   fense, is on the prosecution to prove beyond a reasonable doubt
   that the defendant did not act in self-defense; the burden is not
   on the defendant to prove that he acted in self-defense.

6. CRIMINAL LAW — SUFFICIENCY OF EVIDENCE — APPEAL.

   In determining whether a conviction was based on sufficient
   evidence, a court must consider whether there was sufficient
   evidence to justify a rational trier of fact in finding guilt
   beyond a reasonable doubt.

7. HOMICIDE — SELF-DEFENSE — CHARACTER EVIDENCE.

   The prosecutor in a homicide trial may not introduce evidence of
   the victim's character in his case-in-chief in anticipation of
   defense testimony of violent character supporting a defense of
   self-defense.

8. WITNESSES — IMPEACHMENT.

   A witness may not be impeached by producing extrinsic evidence
   of collateral facts.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Conrad J. Sindt,* Prose-
cuting Attorney, and *Wendelyn M. Harris,* Assis-
tant Prosecuting Attorney, for the people.

*David S. Steingold,* for defendant.

Before: Walsh, P.J., and Gribbs and Shepherd, JJ.

Per Curiam. Following a three-day jury trial, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549. He was sentenced to from 10 to 40 years in prison, with credit for 162 days served. Defendant appeals as of right. We affirm.

On November 11, 1983, William Parish died from a single stab wound to his heart. Parish was visiting with his friend, Daniel Nicholson, and the defendant, at the defendant's Battle Creek apartment. Defendant had placed Parish in some sort of a headlock. When Parish was released or broke loose from the hold, some of his shirt buttons were torn off. Parish became angry at the defendant. An argument ensued between the two men, during which the defendant plunged a folding pocket knife into Parish's chest. Parish ran out of the house and died in the driveway.

## I

Defendant's theory at trial was that he reacted in self-defense. The jury was provided with the standard Criminal Jury Instructions for self-defense (CJI 7:9:01), second-degree murder (CJI 16:3:01), and manslaughter (CJI 16:4:04). The trial court denied defendant's request for the following instruction on imperfect self-defense:

"The law further states that, when a person kills another in self-defense but was not entitled to do so because he was being threatened with less than serious bodily injury, that he is guilty of the lesser included offense of manslaughter."

Defendant first argues that the trial court erred in denying his request for an instruction on imperfect self-defense.

The test for determining whether a defendant has acted in lawful self-defense is whether, according to CJI 7:9:01 which the trial court read to the jury, 1) defendant honestly believed that he was in danger, 2) the degree of danger which he feared was serious bodily harm or death, and 3) the action taken by the defendant appeared at the time to be immediately necessary, *i.e.*, defendant is only entitled to use the amount of force necessary to defend himself. See also *People v Vail*, 49 Mich App 578, 592-593; 212 NW2d 268 (1973), *rev'd on other grounds* 393 Mich 460; 227 NW2d 535 (1975). The criminal jury instruction on self-defense does not state that the defense is not available when the defendant is the aggressor, although cases have generally considered that to be an additional limitation. See *People v Townes*, 391 Mich 578; 218 NW2d 136 (1974), *People v Vicuna*, 141 Mich App 486, 493; 367 NW2d 887 (1985), and *People v VanHorn (On Remand)*, 64 Mich App 112; 235 NW2d 80 (1975), *lv den* 397 Mich 820 (1976).

"Imperfect self-defense" is a qualified defense which can mitigate an act of second-degree murder to voluntary manslaughter. *People v Morrin*, 31 Mich App 301, 311, fn 7; 187 NW2d 434 (1971), *lv den* 385 Mich 775 (1971). This qualified defense has been invoked elsewhere than in Michigan where a defense of self-defense fails because the defendant was the aggressor, or maintained an unreasonable belief of danger, or reacted with an unreasonable amount of force. *State v Powell*, 84 NJ 305, 313; 419 A2d 406 (1980).

Although the doctrine of imperfect self-defense has been codified in several jurisdictions (see *e.g.*, Ill Rev Stat 1969, Ch 38, § 9-2[b]) and is recognized

in the Model Penal Code (§ 3.09[2]), the doctrine has not been explicitly recognized in Michigan to the extent urged by defendant in this case. The doctrine has been applied only where the defendant would have had a right to self-defense but for his actions as the initial aggressor. *People v Vicuna, supra,* p 493; *People v Springer,* 100 Mich App 418; 298 NW2d 750 (1980), *rem on other grounds* 411 Mich 867 (1981), *rev'd on other grounds,* 417 Mich 1060 (1983).

Here, as noted above, the trial court read the standard criminal jury instruction on self-defense, which does not contain a limitation where a defendant is the aggressor. There was evidence presented in this case from which the jury could reasonably conclude that defendant did not have an honest belief that he was in imminent danger of death or serious bodily harm and that he used more force than he could reasonably have believed necessary to eliminate the danger. Thus, an instruction on each of these factors would be necessary were we to adopt defendant's position.

Michigan courts, however, have not addressed this mitigating defense where a defendant merely asserts that he maintained an unreasonable belief or reacted with an unreasonable amount of force. Extension of this defense to such circumstances was alluded to by Judge, now Justice, LEVIN in a footnote in *People v Morin, supra,* p 311, fn 7. We decline to extend the doctrine of imperfect self-defense to cover the circumstances of this case. Application of the defense to these facts would be a significant extension of prior case law and is more appropriately a matter for legislation, court rule, or appeal to the Supreme Court.

## II

Defendant next argues that the trial court erred

in failing to instruct the jury that the prosecution must prove the absence of provocation beyond a reasonable doubt in order to convict defendant of second-degree murder. This issue is without merit. We note initially that defendant did not object at trial to the portion of the jury instructions regarding the prosecutor's burden of proof. A conviction will not be reversed for errors in the jury instructions which were not objected to at trial unless manifest injustice would result. *People v Clayton,* 97 Mich App 815, 816; 296 NW2d 177 (1980), *lv den* 409 Mich 943 (1980).

In any event, provocation or the absence of provocation is not an actual element of the crime of second-degree murder or manslaughter which the prosecution must prove beyond a reasonable doubt. See *People v Doss,* 406 Mich 90, 98-99; 276 NW2d 9 (1979); *People v Van Wyck,* 402 Mich 266, 269; 262 NW2d 638 (1978). The standard criminal jury instructions read to the jury on second-degree murder (CJI 7:9:01) and voluntary manslaughter as a lesser included offense of murder (CJI 16:4:02) adequately informed the jury of the differences between the two offenses and the prosecutor's burden of proof.

### III

Defendant next argues that the circuit court erred in denying defendant's motion to quash the information.

An examining magistrate's function is to determine whether a crime has been committed and whether there is probable cause for charging the defendant with that crime. MCL 766.13; MSA 28.931. The magistrate need not find positive proof of guilt but there must be evidence on each ele-

ment charged or from which these elements can be inferred. *People v Doss, supra,* p 101.

"The object of a preliminary examination is not to prove guilt or innocence beyond a reasonable doubt, nor should a magistrate discharge a defendant when evidence conflicts or raises reasonable doubt of his guilt; such questions should be left for the jury upon the trial. *People v Medley,* 339 Mich 486; 64 NW2d 708 (1954)." *Id.,* p 103.

In reviewing the decision of a magistrate to bind over an accused, the circuit court judge may not substitute his judgment for that of the magistrate, but may reverse a magistrate's decision only if it appears on the record that there has been an abuse of discretion. *People v Talley,* 410 Mich 378, 384; 301 NW2d 809 (1981).

To charge the defendant here with second-degree murder, the magistrate must have been satisfied that there was sufficient evidence showing that William Parish died on November 11, 1983, that the death was caused by an act of the defendant, and that the defendant intended to kill or cause great bodily harm without justification or excuse. CJI 16:2:01. Daniel Nicholson, an eyewitness, testified that on November 11, 1983, the defendant, Parish, and Nicholson were at the defendant's apartment. Nicholson testified that, after a verbal argument between Parish and the defendant, the defendant drew a knife. He further testified that the two men stood six to seven feet apart when Nicholson began to leave the room, the defendant "hit" the decedent in the chest with the knife, the decedent never hit or touched the defendant, and the decedent died in the driveway soon after he ran from the house.

We conclude that the magistrate did not abuse his discretion in binding defendant over for trial

on second-degree murder and the circuit court properly denied defendant's motion to quash the information.

## IV

Defendant also argues that there was insufficient evidence to support his conviction for second-degree murder. He claims that the prosecution did not meet its burden of proving that defendant was not acting in self-defense.

When a defendant introduces evidence of self-defense, the prosecution bears the burden of excluding the possibility that the defendant acted in self-defense. *People v Norwood,* 123 Mich App 287, 296; 333 NW2d 255 (1983), *lv den* 417 Mich 1006 (1983). The jury was so instructed in the present case. The standard of review for a sufficiency of the evidence claim is whether a rational trier of fact could find that the elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979), *cert den,* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980).

In the present case there was ample evidence from which the jury could conclude that the prosecution had met its burden of excluding the possibility that defendant acted in self-defense. The prosecution introduced evidence showing that defendant was not in danger of death or serious bodily injury and that he used an unreasonable amount of force.

## V

Defendant next argues that the prosecution introduced evidence of his prearrest and post-arrest silence in violation of *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). The prosecutor ques-

tioned defendant's neighbor, Angus Radcliffe, about statements defendant had made immediately after defendant stabbed Parish and before the police arrived. Radcliffe testified that defendant said that "Jack was trying to break up his house". He further testified that he did not hear defendant say anything about being assaulted.

Michigan courts have repeatedly held that silence of the accused in the face of police questioning may not be used as evidence of the accused's guilt at trial. *People v Bobo, supra; People v Pelkey,* 129 Mich App 325; 342 NW2d 312 (1983); *People v Gallon,* 121 Mich App 183; 328 NW2d 615 (1982). Although in *Bobo* the accuser was a police officer, the Court stated that it was unimportant whether the accuser was a police officer or not. 390 Mich 361.

We need not determine whether *Bobo* applies where a witness who is not a police officer testifies about a defendant's silence because here, defendant did not exercise his right to remain silent. Rather, he chose to offer an explanation of his version of the events to a neighbor. The prosecutor was entitled to present testimony that defendant's explanation to the neighbor was incomplete or inaccurate. Moreover, evidence of defendant's statements and demeanor shortly after the stabbing are admissible as part of the res gestae. *People v Sheehy,* 31 Mich App 628, 630; 188 NW2d 231 (1971), *lv den* 384 Mich 844 (1971). Furthermore, defense counsel made no objection at trial to these remarks, which precludes review absent manifest injustice. *People v Dupree,* 128 Mich App 368, 371; 341 NW2d 134 (1983), *lv den* 419 Mich 853 (1984). Review of the record indicates that no fundamental injustice resulted.

Defendant also objects to evidence introduced by the prosecution to rebut hospital records intro-

duced by defendant. Although defendant did not testify at trial, he did introduce hospital records which contained a physician's statement that defendant had scratch marks on his neck and also contained defendant's statement that he had been choked. To rebut this evidence, the prosecution called police officer David Riley who testified that he observed no injuries to defendant and that defendant made no complaints about an injury to his neck during his booking until after he had talked to his attorney on the telephone. Not only was this evidence not objected to at trial, but we view the testimony as proper rebuttal to defendant's evidence that he had a neck injury. See *People v Dyson,* 106 Mich App 90; 307 NW2d 739 (1981).

## VI

Defendant raises two final arguments in this appeal, both in connection with evidence of the victim's character. First, defendant argues that the prosecution improperly questioned a neighbor, Carlos Smith, about the victim's reputation as a peaceful person in the prosecution's case-in-chief. Smith testified on direct examination, without objection from defense counsel, that the victim was not assaultive but "ran his mouth a lot". On cross-examination, after Smith admitted that this was his own opinion and not necessarily the victim's reputation, defense counsel moved to strike the testimony about the victim's peaceful reputation. The trial court refused.

We agree with defendant that this testimony was improper. The prosecution may not introduce evidence of the victim's character in its case-in-chief in anticipation of defense testimony of violent character supporting a defense of self-defense.

*People v Edwards,* 139 Mich App 711, 718-719; 362 NW2d 775 (1984); *People v McIntosh,* 62 Mich App 422, 429; 234 NW2d 157 (1975), *aff'd in part and rev'd in part* 400 Mich 1; 252 NW2d 779 (1977). However, this was not the objection raised by defendant below. Although error, we do not believe the error in this case resulted in manifest injustice.

Second, defendant argues that it was improper for the prosecution to call Detective Gunderson as a rebuttal witness to testify to an alleged prior inconsistent statement of defense witness Thelma Dantley about the victim's assaultive character. Dantley testified on direct examination by defense counsel that the victim had a reputation as a troublemaker. On cross-examination, she testified that she did not tell Detective Gunderson that she had never known the victim to hurt anyone or be assaultive. The prosecution called Detective Gunderson in rebuttal to impeach Dantley's testimony. Gunderson testified that he talked to Dantley about a week after the incident and she told him that to her knowledge the victim was not assaultive. Defendant counsel made no objection to this testimony.

Defendant argues that Detective Gunderson's testimony was not admissible as impeachment based on the well-settled rule that a witness may not be impeached by extrinsic evidence on a collateral matter. *People v Teague,* 411 Mich 562, 566; 309 NW2d 530 (1981); *People v Losey,* 413 Mich 346, 353; 320 NW2d 49 (1982). We agree with defendant's statement of the rule but do not view this impeachment as impeachment on a collateral matter. In *People v McGillen #1,* 392 Mich 251, 266-267; 220 NW2d 677 (1974), the Supreme Court quoting from 98 CJS, Witnesses, §§ 632, 633, stated:

"A party is free to contradict the answers which he has elicited from his adversary or his adversary's witnesses on cross-examination as to matters germane to the issue. * * *

"As a general rule, a witness may not be contradicted as to collateral, irrelevant, or immaterial matters, and, accordingly, subject to some qualifications, where a party brings out such matters on cross-examination of his adversary's witness, he may not contradict the witness' *[sic]* answers."

The victim's reputation as a peaceful person was relevant to the issue of self-defense raised by the defendant. The prosecution did not attempt to inject a new issue into the case. Accordingly, the prosecution was free to introduce evidence of the prior inconsistent statement to impeach Dantley's testimony at trial.

Affirmed.