**Gaylin JOHNIGAN, Petitioner,**

v.

**Frank ELO, Respondent.**

**No. Civ. 00–CV–73445–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

May 17, 2002.

Gaylin Johnigan, Adrian, MI, pro se.

Brenda E. Turner, Bethany L. Scheib, Michigan Department of Attorney General, Lansing, MI, for respondent.

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

STEEH, District Judge.

### I. Introduction

Gaylin Johnigan, ("petitioner"), presently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se,* petitioner challenges the legality of his conviction after a bench trial in the Recorder's Court for the City of Detroit of one count of assault with intent to commit murder, M.C.L. § 750.83, and one count of possession of a firearm during the commission of a felony ("felony firearm"). M.C.L. § 750.227b. Petitioner was sentenced to ten to twenty years imprisonment for assault with intent to commit murder and a consecutive two years imprisonment for felony firearm. Petitioner challenges both convictions and sentences. The Court concludes for the following reasons that the petition must be denied.

### II. Factual Background

Petitioner was convicted of intentionally shooting a neighbor in the back. The Michigan Court of Appeals summarized the facts of the case as follows:

> The prosecutor here presented evidence that the victim approached defendant and asked to borrow $10, which led to an argument. The argument escalated and, at one point, the victim picked up a chair, held it over his shoulder ready to swing it at defendant, but then put it down. The victim then left the scene and returned to his apartment. Approximately thirty minutes after this confrontation, the victim left his apartment, without any weapon, and went to get the mail. On his way to the mailbox, he passed defendant's apartment, heard the door open, and felt pain in his back. The victim had been shot and, as a result, spent three months in the hospital. Shortly thereafter, defendant told two police officers that there had been a struggle and that there was an accidental gun shot [sic]. Defendant also stated that when he shot the victim, the victim did not have a gun, and they did not struggle.

*People v. Johnigan,* Docket No. 200601, 1999 WL 33453395 (March 19, 1999) (*per curiam*).

Medical records established that the victim was shot in the back, although he had wounds in both the back and the abdomen. The back wound was an entrance wound, that is, a wound caused by the bullet from a gunshot entering the body. The abdominal wound was an exit wound, a wound caused by the bullet from a gunshot leaving the body after passing through it. Much of the victim's digestive tract was destroyed. In the face of overwhelming medical evidence that the victim was shot in the back, as well as the victim's testimony, petitioner denied shooting the victim in the back, even after conviction at his sentencing.

Petitioner presented an insanity and diminished capacity defense, as well as the defense of self-defense. Evidence was presented indicating that petitioner suffered from chronic mental illness. However, contradictory evidence was presented indicating that petitioner was not mentally ill at the time of the shooting. Concerning whether petitioner may have been psychotic at the time of the offense, one expert testified that petitioner was experiencing command hallucinations at the time of the offense. However, petitioner told jail personnel shortly after his arrest that he had not heard voices for two years. Petitioner never told the arresting or interrogating officers that he was hearing voices at the time of the shooting.[1]

The trial court found that petitioner was legally sane, not suffering from a diminished capacity to conform his behavior to the law, and not presently mentally ill. The evidence that petitioner expressed remorse immediately after shooting the victim and that petitioner disposed of the gun by leaving the scene and giving it to someone within minutes of shooting the victim indicated that petitioner was able to appreciate the wrongfulness of his conduct and

conform his behavior to the requirements of the law. Further, petitioner initially denied knowing whether he had shot the victim, then later admitted that he had been lying about this. Petitioner initially claimed that the victim had a gun during the second confrontation and that the victim approached petitioner and they scuffled before the gun went off. Petitioner later admitted that he also had been lying about this; the victim had no gun, was in fact unarmed, and there was no scuffle. Petitioner also told police that he did not own a gun, but later admitted that he shot the victim with his (petitioner's) gun, a black .357 Magnum caliber revolver. These facts also supported the trial judge's finding that petitioner was aware of the wrongfulness of his conduct, that he was not legally insane, and was able to conform his conduct to the law, for a person who is legally insane, or whose mental capacity is so diminished that he cannot conform his conduct to the law, is unlikely to lie about such matters in an attempt to evade legal responsibility.

### III. Procedural History

Petitioner was convicted of assault with intent to commit murder and felony firearm on September 5, 1996, after a bench

---

1. Dr. Firoza Van Horn testified that petitioner suffered from diminished capacity and was not criminally responsible. Dr. Van Horn's conclusion was supported by her findings that petitioner suffered from paranoid schizophrenia that was exacerbated by high stress which reduced his capacity to conform his behavior to the requirements of the law. Dr. Van Horn also found that petitioner heard voices during the incident. Dr. Ronald Kolito also was called as a defense witness. Dr. Kolito testified that petitioner claimed to have heard voices during the incident and noted that petitioner had been hospitalized for psychiatric problems in the past. Dr. Kolito concluded that petitioner was mentally ill based on his interview with petitioner and review of his medical records. Dr. Kolito testified that command hallucinations, mental illness, and schizoaffective disorder interfered with peti-

tioner's ability to appreciate the wrongfulness of his conduct during the incident. However, Dr. Kolito concluded that, although petitioner suffered from diminished capacity, he was not legally insane and was criminally responsible.

Dr. Charles Clark testified for the prosecution. Dr. Clark concluded that petitioner did not meet the criteria for legal insanity because there was an absence of any current, acute symptoms of mental illness, and he was not mentally retarded. Dr. Clark did not believe the petitioner was hallucinating the day of the shooting (June 20, 1995) because no report of hallucinations was made until March of 1996. Dr. Clark concluded that petitioner did not suffer from diminished capacity, because petitioner did not claim he was incapable of forming an intent to act, but claimed he did not intend to kill the victim.

trial before Judge Kym L. Worthy of the Recorder's Court for the City of Detroit. Petitioner was sentenced on September 25, 1996, to ten to twenty years for assault with intent to commit murder and a consecutive two year term for felony firearm.

Petitioner appealed his conviction as of right to the Michigan Court of Appeals, which affirmed his conviction in an unpublished *per curiam* opinion. *See People v. Johnigan,* 1999 WL 33453395, Docket No. 200601 (March 19, 1999) *(per curiam ).* The Michigan Supreme Court denied petitioner's delayed application for leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Johnigan,* 461 Mich. 921, 604 N.W.2d 681 (1999).

On or about May 22, 2000, petitioner filed the instant petition for a writ of habeas corpus in this Court, raising the following claims for relief:

I. Because the prosecution failed to prove beyond a reasonable doubt that petitioner did not shoot the victim in self-defense, petitioner's conviction is not supported by constitutionally sufficient evidence.

II. Because the evidence established that petitioner was not guilty by reason of insanity, or that he suffered from diminished capacity when he shot the victim, or was guilty but mentally ill, petitioner's conviction is not supported by constitutionally sufficient evidence.

III. Petitioner's constitutional rights were violated when the trial court admitted an incriminating statement petitioner made to police officer Michael Kawa soon after the police arrived to investigate the shooting.

Respondent has answered the petition. Respondent contends that the petition should be denied because petitioner's claims lack merit.

**2.** 28 U.S.C. § 2254(e)(1) provides, in perti-

## IV. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104– 132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429 (6th Cir.1998); *Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) [2]; *see also Cremeans v.*

nent part:

*Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

**3.** Such evidence may be presented by the prosecution or the defense. Of course, the defense is not obligated to present any evi-

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11, 120 S.Ct. 1495 (emphasis in original).

With this standard in mind, the Court proceeds to address the petition for a writ of habeas corpus.

## V. Discussion

### A. Self-defense, intent to kill, and sufficiency of the evidence

Petitioner contends that insufficient evidence supports his conviction for assault with intent to commit murder, because the prosecution failed to prove beyond a reasonable doubt that he did not act in self-defense and that he intended to kill the victim. This Court disagrees.

■ The Due Process Clause of the Fourteenth Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The issue before this Court is whether sufficient evidence was presented from which a reasonable factfinder could find that the essential elements of the crime were proven beyond a reasonable doubt.[3] The ap-

dence. Where the defense presents evidence, this evidence may directly or inferentially support a reasonable finding of guilt. For instance, if a defense witness called to provide alibi evidence actually testified she never saw the defendant the day of the crime, or worse (for the defendant) testified she saw the defendant and victim together shortly before the crime.

propriate standard of review in a federal habeas corpus proceeding involving a claim of insufficiency of evidence in a state criminal conviction is whether, after reviewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard of review recognizes the trier of fact's responsibility to reasonably resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia, supra* at 318, 99 S.Ct. 2781.

The reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). *Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir.1993); *cert denied*, 510 U.S. 1200, 114 S.Ct. 1314, 127 L.Ed.2d 664 (1994). Determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *United States v. Saunders*, 886 F.2d 56 (4th Cir.1989). The habeas court does not substitute its judgment for that of the finder of fact. *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995).

The habeas court must review all of the evidence in the record and determine whether a reasonable jury could have found guilt beyond a reasonable doubt. "The evidence must afford a substantial basis from which a fact in issue can reasonably be inferred." *Spalla v. Foltz*, 615 F.Supp. 224, 227 (E.D.Mich.1985), *aff'd*, 788 F.2d 400 (6th Cir.), *cert. denied*, 479 U.S. 935, 107 S.Ct. 410, 93 L.Ed.2d 362 (1986). Circumstantial evidence from which a reasonable inference of guilt beyond a reasonable doubt may be drawn is constitutionally sufficient. *Id.; Evans–Smith v. Taylor*, 19 F.3d 899, 909 (4th Cir.), *cert. denied*, 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 211 (1994) (holding that circumstantial evidence that Evans–Smith strangled his wife and staged a fake robbery-rape scene to conceal his crime was insufficient to support his murder conviction).

Petitioner challenges the sufficiency of the evidence to support his assault with intent to commit murder conviction.[4] This Court must reject his challenge if, considering the evidence in the light most favorable to the prosecution, it concludes that a rational fact finder could have found that the elements of the crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. 2781. In making this judgment, this Court must bear in mind that the beyond a reasonable doubt standard, itself mandated by the Due Process Clause, requires the factfinder "to reach a subjective state of near certitude of the guilt of the accused [and] symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself." *Jackson v. Virginia*, 443 U.S. at 315, 99 S.Ct. 2781.[5] *See also,*

---

**4.** It follows logically that, if petitioner's conviction for assault with intent to commit murder is not supported by sufficient evidence, his felony firearm conviction would also be unconstitutional.

**5.** "In a criminal case [ ] we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty.... In this context, I

view the requirement of proof beyond a reasonable doubt in a criminal case as bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free. It is only because of the nearly complete and long-standing acceptance of the reasonable-doubt standard by the States in criminal trials that the Court has not before today had to hold explicitly that due process, as an expres-

*Victor v. Nebraska,* 511 U.S. 1, 14, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (rejecting a due process challenge to a jury instruction in a criminal case, concluding that, "the reference to moral certainty, in conjunction with the abiding conviction language, impressed upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused"); *United States v. Fountain,* 993 F.2d 1136, 1139 (4th Cir.1993); and "Beyond Reasonable Doubt" 68 N.Y.U.L.Rev. 970 (1993) (Newman, J.).

This Court recognizes that the very existence of the *Jackson* test presupposes that juries accurately charged on the elements of a crime and on the strict burden of persuasion to which they must hold the prosecution, nevertheless may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt. This Court shall assume that judges may do so also. The

test was adopted to provide an additional safeguard against that possibility, and gives added assurance that guilt should never be found except on a rationally supportable state of near certitude, that is, proof upon which a rational factfinder could find proof of the crime beyond a reasonable doubt. *Evans–Smith v. Taylor,* 19 F.3d at 905. Therefore, the question before this Court in the instant case is whether the evidence, taken together and viewed in the light most favorable to the prosecution, could allow any rational trier of fact to conclude beyond a reasonable doubt that petitioner committed the elements of assault with intent to commit murder. *Warren v. Smith,* 161 F.3d at 360.[6] In conducting such an inquiry this Court considers all the evidence presented in the record.[7]

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined

---

sion of fundamental procedural fairness, requires a more stringent standard for criminal trials than for ordinary civil litigation." *In re Winship,* 397 U.S. at 371, 90 S.Ct. 1068 (Harlan, J., concurring).

**6.** This Court recognizes that, under the AEDPA, habeas relief may be granted only if a state court decision is contrary to controlling United States Supreme Court precedent, an objectively unreasonable application of such precedent, or based on an unreasonable determination of the facts. To warrant habeas relief, a state court adjudication must not be merely incorrect; it must also be objectively unreasonable. *Williams v. Taylor,* 529 U.S. at 409–411, 120 S.Ct. 1495. The First Circuit has recently stated that habeas review of an insufficiency of the evidence claim involves examining whether the state court decision "is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted[,]" and that "[i]t may be useful, although not mandatory, to review first the underlying constitutional issue, here the *Jackson* question." *Hurtado v. Tucker,* 245 F.3d 7, 15 (1st Cir.2001). This Court disagrees that an additional level of deference to the state court's decision is required in an insufficiency of the evidence claim. Under

*Jackson,* a defendant is only entitled to relief from a jury conviction if the evidence was so deficient that no reasonable or rational jury could have found the elements of the crime beyond a reasonable doubt. Where the evidence presented at trial was so weak that the petitioner is entitled to relief under *Jackson,* because no rational or reasonable jury could have found proof beyond a reasonable doubt of all the elements of the crime, a state trial or appellate court's decision upholding the defendant's conviction is objectively unreasonable.

**7.** Michigan law follows the *Jackson* standard in reviewing challenges to the sufficiency of the evidence. If a rational trier of fact could reasonably have found that the essential elements of the crime were proven beyond a reasonable doubt, the conviction must be sustained. *People v. Petrella,* 424 Mich. 221, 268–270, 380 N.W.2d 11 (1985); *People v. Hutner,* 209 Mich.App. 280, 282, 530 N.W.2d 174 (1995). Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime. *People v. Carines,* 460 Mich. 750, 757, 597 N.W.2d 130 (1999).

by state law." *Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. 2781. Hence, it is necessary to summarize the elements of assault with intent to commit murder under Michigan law.

■ Petitioner argues that the evidence was insufficient to sustain a finding of the element of intent to kill necessary for his conviction of assault with intent to murder and that the prosecution failed to prove beyond a reasonable doubt that he did not act in self-defense. This Court disagrees. The elements of assault with intent to commit murder are (1) an assault, (2) made with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v. McRunels,* 237 Mich. App. 168, 181, 603 N.W.2d 95 (1999); MCL 750.83. These elements may be proved by circumstantial evidence and any reasonable inferences arising therefrom. *Id.* Proof of intent may be satisfied by minimal circumstantial evidence. *Id.; People v. Bowers,* 136 Mich.App. 284, 297, 356 N.W.2d 618 (1984). The factfinder "may infer an intent to kill from the manner of use of a dangerous weapon." *People v. Dumas,* 454 Mich. 390, 403, 563 N.W.2d 31 (1997). The elements of felony firearm are that the defendant possessed a firearm during the commission or attempt to commit a felony. *People v. Davis,* 216 Mich. App. 47, 53, 549 N.W.2d 1 (1996).

■ To support a conviction of assault with intent to commit murder, M.C.L. § 750.83; M.S.A. § 28.278, the actual intent to kill must be proven beyond a reasonable doubt. *People v. Crawford,* 128 Mich.App. 537, 539, 340 N.W.2d 323 (1983), *lv. den.* 418 Mich. 956, 344 N.W.2d 6 (1984). See also 2 CJI, Assault Commentary, pp. 17–23 to 17–26A (Supp.2/83). A specific intent to kill is the only form of malice that supports a conviction of assault with intent to commit murder. *Maher v. People,* 10 Mich. 212, 216–217 (1862). A finding that defendant had formed the spe-

cific intent to kill when he pointed his weapon at the victim is sufficient to support a conviction of assault with intent to commit murder. *See People v. Bailey,* 451 Mich. 657, 667, 669, 549 N.W.2d 325 (1996); *People v. Gjidoda,* 140 Mich.App. 294, 297, 364 N.W.2d 698 (1985) (the trial court's mere finding that the defendant acted with malice in shooting the two victims was sufficient to sustain conviction of second-degree murder of one victim and assault with intent to commit murder of the other victim). *See also People v. Harding,* 443 Mich. 693, 714 n. 22, 506 N.W.2d 482 (1993) (Brickley, J) (assault with intent to commit murder is a lesser included offense of felony murder only if the malice to establish felony murder is the intent to kill, not the intent to inflict great bodily harm or the intent representing a depraved heart).

■ Under the facts of this case, the evidence showed that petitioner intentionally pointed his loaded .357 Magnum handgun at the unarmed victim at very close range, aimed at either the victim's mid-back or abdomen, pulled the trigger, and fired a shot without warning. This was sufficient evidence from which a reasonable factfinder could find beyond a reasonable doubt that petitioner actually intended to kill the victim. Therefore, petitioner's claim that the prosecution failed to produce sufficient evidence of his actual intent to kill fails.

■ Petitioner claims that the prosecution failed to disprove his defense of self-defense beyond a reasonable doubt. Once evidence of self-defense is introduced, the prosecution bears the burden of disproving self-defense beyond a reasonable doubt. *People v. Truong,* 218 Mich. App. 325, 337, 553 N.W.2d 692 (1996). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual

penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *People v. Barker,* 437 Mich. 161, 165, 468 N.W.2d 492 (1991); *People v. Kemp,* 202 Mich.App. 318, 322, 508 N.W.2d 184 (1993); *People v. Deason,* 148 Mich. App. 27, 31, 384 N.W.2d 72 (1985). Further, a defendant is not entitled to use any more force than is necessary to defend himself. *People v. Kemp,* 202 Mich.App. at 322, 508 N.W.2d 184. The law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances. *Truong, supra.*

■ "[T]he killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that [her] life is in imminent danger or that there is a threat of serious bodily harm." *People v. Heflin,* 434 Mich. 482, 502, 456 N.W.2d 10 (1990). The right to act in self-defense generally includes the right to defend another. *People v. Curtis,* 52 Mich. 616, 622, 18 N.W. 385 (1884); *People v. Wright,* 25 Mich.App. 499, 503, 181 N.W.2d 649 (1970). Again, once evidence that the defendant acted in self-defense has been introduced, the prosecution bears the burden of disproving it beyond a reasonable doubt. *People v. Fortson,* 202 Mich.App. 13, 20, 507 N.W.2d 763 (1993).

■ Viewing the evidence in the instant case in a light most favorable to the prosecution, this Court concludes that the prosecution introduced sufficient evidence to disprove defendant's self-defense claim. The trial and appellate courts appropriately considered the evidence that petitioner and the victim had argued and the victim threatened petitioner with a chair. However, petitioner shot the victim about thirty minutes after the victim had put the chair down without swinging it at petitioner. Both petitioner and the victim had returned to their apartments after the first confrontation, a half an hour had passed, the victim came out to get his mail, and petitioner then shot him in the back.

Even if it is assumed, for the sake of argument, that the victim was facing and approaching petitioner when petitioner pointed his handgun at the victim, and the victim was shot in the back because he turned away an instant before petitioner pulled the trigger, there still would be more than sufficient evidence to disprove petitioner's self-defense claim. Petitioner admitted, and the victim testified, that (1) the prior confrontation between petitioner and the victim ended about thirty minutes before the shooting and the victim never swung at or hit petitioner with the chair, (2) the victim was unarmed when petitioner shot him, and (3) there was no scuffle or struggle between petitioner and the victim before petitioner shot him. A reasonable factfinder could find beyond a reasonable doubt on the basis of this evidence that petitioner did not honestly and/or reasonably fear that he was in imminent danger of death or serious bodily harm from the victim. Petitioner admitted that he shot the victim at very close range with a .357 Magnum handgun without taking any other action to defend himself, or encourage the victim to leave. There was no evidence that petitioner attempted to retreat from or avoid the victim, or told or ordered the victim to leave, or cried "stop, or I'll shoot," or fired a warning shot. Petitioner simply shot the victim when he got within close range, then disposed of the weapon and lied to the police about the circumstances of the shooting. Thus, even a reasonable factfinder who believed that the victim had verbally confronted petitioner immediately before the shooting could nonetheless find beyond a reasonable doubt that petitioner had use far more

force than was necessary to defend himself. It is undisputed that petitioner shot the victim with a firearm, a .357 Magnum revolver. Review of the record, including petitioner's confession and the victim's trial testimony, overwhelmingly shows that petitioner is guilty of assault with intent to commit murder and felony firearm.

Accordingly, petitioner's assault with intent to commit murder conviction and felony firearm conviction are supported by constitutionally sufficient evidence. The Michigan Court of Appeals decision so finding is a reasonable application of controlling federal law. The Michigan Court of Appeals applied the correct legal standard in a reasonable fashion. Consequently, petitioner's claim that his convictions are not supported by constitutionally sufficient evidence because the prosecution failed to disprove his defense of self-defense and failed to prove that he acted with an intent to kill is denied.

## B. Petitioner's mental status and sufficiency of the evidence

■ Petitioner contends that the evidence established that he was insane and/or of such diminished capacity that he lacked criminal responsibility, or in the alternative, was guilty but mentally ill. Petitioner's offense was committed on June 20, 1995. His trial took place in 1996. In 1994, the Michigan Legislature amended the State's insanity statute to provide that the insanity defense is an affirmative defense and that "[t]he defendant has the burden of proving the defense of insanity by a preponderance of the evidence." MCL 768.21a(3); MSA 28.1044(1)(3). The Legislature clearly intended to place the burden of proof of this defense on defendants. Beginning with the Michigan Court of Appeals' determination in *People v. Mangiapane*, 85 Mich. App. 379, 395, 271 N.W.2d 240 (1978), and consistently thereafter, the Michigan courts have construed the defense of diminished capacity to come within the codified definition of legal insanity and therefore has held that it is subject to the same procedural requirements that are statutorily imposed on the insanity defense.[8]

The trial court did not relieve the prosecution of its burden of establishing beyond

---

8. As long as the State remains responsible to prove beyond a reasonable doubt the essential elements of an offense, the United States Supreme Court has held that it is constitutionally permissible to impose on a defendant the burden of proving an insanity defense that exculpates the defendant. *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). Whether or not mental disease or defect is established, the State always bears the burden of proving beyond a reasonable doubt the essential mental elements of the crime charged. However, that the defendant was sane is not a mental element of the offense of assault with intent to murder. Rather, insanity is an affirmative defense to the charge.

The fact that the Constitution allows Congress or state legislatures to enact laws allocating to criminal defendants the burden of proving affirmative defenses does not mean that, absent a statute actually doing so, the burden may be shifted to the defense. In other words, though it may be constitutionally permissible to enact a burden-shifting statute, some affirmative legislative action must trigger that shift. Absent such a statute, the burden of proof remains on the government to negate beyond a reasonable doubt the affirmative defense properly raised by the defendant. *See, e.g., Jacobson v. United States*, 503 U.S. 540, 549, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992) (entrapment defense); *Mullaney v. Wilbur*, 421 U.S. 684, 701, 704, 95 S.Ct. 1881, 1890, 1892, 44 L.Ed.2d 508 (1975) (heat of passion defense); *United States v. Read*, 658 F.2d 1225, 1236 (7th Cir. 1981) (withdrawal from conspiracy defense); *United States v. Jackson*, 569 F.2d 1003, 1008 n. 12 (7th Cir.), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978) (self-defense). As noted, however, Michigan passed a statute placing the burden of proving the affirmative defense of insanity on the defense in 1994.

a reasonable doubt all the essential elements of the offense in this case, which included the specific intent to commit the acts proscribed by the applicable statutes. In this bench trial, the trial court stated on the record that the prosecution had proved beyond a reasonable doubt all the essential elements of each offense for which the court returned a conviction, and only then did the trial court turn to the question whether defendant had established by a preponderance of the evidence that he suffered from legal insanity or diminished capacity due to mental illness. The trial court concluded that he had not. Therefore, because the trial court expressly determined that the prosecution had carried its burden of proof beyond a reasonable doubt with respect to the relevant offenses in this case, there was no improper shifting of the burden.

Defendant contends that the evidence he presented at trial sufficiently established that he was legally insane and/or of such diminished capacity that he could not form the intent to commit assault with intent to kill and/or felony firearm, and thereby negated the specific intent necessary to sustain these charges.

Thus, petitioner contends that his convictions are supported by insufficient evidence. The Court must review the sufficiency of the evidence in a bench trial in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt. That is, this Court must determine whether sufficient evidence was presented for a rational fact finder to find that the elements of the crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. 2781. *People v. Petrella*, 424 Mich. 221, 268–270, 380 N.W.2d 11 (1985). This Court has already performed this analysis regarding the elements of the crimes of which petitioner was convicted.

▮▮▮▮ A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." A challenge to a conviction must therefore do more than pose a question of state law, for such a challenge alleges no deprivation of federal rights and does not merit habeas relief. *See Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). With this requirement, the dichotomy discussed supra between elements and non-elements of a criminal act again plays an important role. Challenges to evidence pertaining to an element of an offense raise constitutional due process concerns under *In re Winship* and *Jackson v. Virginia* and are thus reviewable on habeas review. The Sixth Circuit has held that, on the other hand, challenges to evidence on non-elements do not generally implicate *In re Winship* and *Jackson v. Virginia*, and are not reviewable through a § 2254 petition. *Gall v. Parker*, 231 F.3d 265, 307–08 (6th Cir. 2000), *cert. denied*, 533 U.S. 941, 121 S.Ct. 2577, 150 L.Ed.2d 739 (2001); *see also, Engle*, 456 U.S. at 119–22, 102 S.Ct. 1558, 71 L.Ed.2d 783 (refusing to review an argument pertaining to an affirmative defense).

▮▮▮▮ An alternative way to gain habeas review is to show that a defense raised fully "negates an element" of a crime; a state must then disprove that defense as part of its burden of proof. *See id.* at 122, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783. A contention that a state failed to disprove this type of defense rais-

es a colorable constitutional claim appropriate for habeas review. *See id.* In Michigan, however, sanity is not an element of assault with intent to murder, and insanity does not necessarily negate an element of assault with intent to murder. Thus, this Court can not review this claim.

Michigan's statute places the burden of proving legal insanity squarely on a defendant's shoulders. Petitioner's case is thus no different than *Duffy v. Foltz,* 804 F.2d 50, 54 (6th Cir.1986), where the Sixth Circuit held that because sanity was not an element of the relevant crimes under Michigan law, Duffy's claim that there was insufficient proof of sanity did not raise a federal constitutional issue.[9] *See also Allen v. Redman,* 858 F.2d 1194, 1198 (6th Cir.1988) (stating that, if Michigan law required the defendant to bear the burden of proving the affirmative defense of insanity, "it is clear that no habeas review would be permissible").

■ Petitioner alternatively argues that, if the evidence at trial did not show that he was insane or suffered from diminished capacity, it did show that he was mentally ill. This claim also is not cognizable in federal habeas corpus. Under Michigan's statute codifying the guilty but mentally ill verdict, the prosecution bears the burden of proving that the defendant is mentally ill beyond a reasonable doubt. M.C.L. § 768.36(1); *People v. Stephan,* 241 Mich.App. 482, 491, 616 N.W.2d 188 (2000). In this respect, the guilty but mentally ill verdict differs from the insanity defense. *Id.* However, whether the defendant is mentally ill or not mentally ill is *not* an element of any criminal offense. Therefore, a challenge to the evidence pertaining to this matter is not reviewable in habeas corpus.

One legislative object in creating the classification of guilty but mentally ill vis-a-vis simply guilty was to assure that the former would be provided mental health treatment. *People v. Booth,* 414 Mich. 343, 353–354, 324 N.W.2d 741 (1982). This reason for the guilty but mentally ill classification is not rendered a nullity simply because a defendant found guilty and not mentally ill might also receive mental health treatment under M.C.L. § 330.2001 et seq.; M.S.A. § 14.800(1001) et seq. Further, the guilty but mentally ill verdict "does not absolve a defendant of criminal responsibility; rather, it affords him psychiatric treatment. 'The major purpose in creating the guilty but mentally ill verdict . . . . was to limit the number of persons who, in the eyes of the Legislature, were *improperly* being relieved of all criminal responsibility by way of the insanity verdict.' " *People v. Stephan,* 241 Mich.App. at 491, 616 N.W.2d 188 (quoting *People v. Ramsey,* 422 Mich. 500, 512, 375 N.W.2d 297 (1985)) (emphasis in original). There is no indication that the guilty but mentally ill verdict functions to create an element of any offense, including petitioner's offenses of assault with intent to murder and felony firearm. Therefore, petitioner's claim that the trial court reached an incorrect verdict on this question which was not supported by the evidence does not present a federal constitutional question cognizable in habeas corpus.

■ Therefore, this Court concludes that petitioner's claims that the trial court's findings that (1) petitioner failed to show that he was insane or had diminished capacity and (2) petitioner was not mentally ill were not supported by sufficient evidence do not present claims cognizable in federal habeas corpus. Consequently,

9. Because "sanity was not and did not become an element of the crimes for which [Duffy] was convicted, the claim that there was insufficient proof of sanity does not raise a federal constitutional issue." *Duffy v. Foltz,* 804 F.2d at 54.

these claims do not entitle petitioner to habeas relief.[10]

## C. Challenge to admission of petitioner's statement to police officer Kawa

Petitioner claims that admission of his statement made to Sergeant Michael Kawa violated his right to be free from compulsory self-incrimination. Sergeant Kawa and his partner answered a call to go to the scene of a shooting at 1620 Gladstone, Apartment 104. The police had been notified that a shooting had been perpetrated by Gaylin Johnigan, the apartment manager who lived in Apartment 104. The police were admitted to Apartment 104 where petitioner was sitting down. The police announced that they were investigating a shooting. Without being questioned, petitioner volunteered that there had been a struggle and an accidental shooting. Petitioner was then informed of his constitutional rights, arrested, and taken to the police station.

"The Self–Incrimination Clause of the Fifth Amendment guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.'" *Withrow v. Williams*, 507 U.S. 680, 688, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (quoting U.S. Const.Amend. V). "'Prophylactic' though it may be, in protecting a defendant's Fifth Amendment privilege against self-incrimination, *Miranda* safeguards 'a fundamental trial right.'" *Withrow*, 507 U.S. at 691, 113 S.Ct. 1745. When an incriminating statement or confession has been admitted in evidence in violation of *Miranda*, a petitioner may be entitled to habeas corpus relief from his or her conviction. *Withrow*, 507 U.S. at 686–96, 113 S.Ct. 1745.

It is well-established that a suspect cannot be subjected to custodial interrogation until he has been advised of his rights

10. Some courts review a jury's finding regarding an affirmative defense under the same type of standard used for a challenge to the sufficiency of the evidence to support a conviction, that is, the standard enunciated in *Jackson v. Virginia. See, e.g., State v. Prince*, 688 So.2d 643, 649 (La.App.2d Cir.1997); *State v. Lively*, 130 Wash.2d 1, 921 P.2d 1035, 1043 (1996) (*en banc*); *Brown v. State*, 250 Ga. 66, 295 S.E.2d 727, 732–33 (1982). In Louisiana, for example, the court explicitly adopted the *Jackson* standard, despite the fact that in Louisiana the defendant has the burden to prove the insanity defense. That court stated:

> In reviewing a claim of insufficiency of evidence in regard to a defense of insanity, a reviewing court applies the test set forth in *Jackson v. Virginia, supra*, to determine whether, viewing the evidence in the light most favorable to the state, any rational juror could have found that the defendant had not proven by a preponderance of the evidence that he was insane at the time of the offense.

*Prince*, 688 So.2d at 649; *cf. State v. Mishne*, 427 A.2d 450, 458 (Me.1981) (employing a *Jackson* type standard); *State v. Anderson*, 44 Wash.App. 644, 723 P.2d 464, 468 (1986).

In the present case, applying the test set forth in the *Prince* case would not entitle petitioner to habeas relief. Contradictory expert testimony was presented on the insanity and diminished capacity issues. Two experts concluded that petitioner was criminally responsible, while one concluded that he was not. Petitioner shot a man with whom he had argued vehemently a half hour before, literally blowing his guts out. Petitioner then disposed of the weapon, expressed remorse, and lied to the police about what he had done. Months later, he claimed that he had been hearing voices during the incident. Viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have readily and reasonably found beyond a reasonable doubt that petitioner failed to prove by a preponderance of the evidence that he was insane or of diminished capacity at the time of the offense. Petitioner may have been "crazy" in the everyday sense of the word when he shot the victim. There was sufficient evidence, however, for a rational fact finder to conclude that he was not insane or of diminished capacity.

consistent with the Supreme Court's decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, any statements that a suspect makes while he is in custody and is being interrogated cannot be admitted at trial unless the suspect was first advised of his *Miranda* rights. *United States v. Hicks,* 967 F.Supp. 242, 245 (E.D.Mich.1997).[11]

*Miranda* prohibits the use of unwarned statements made by a defendant "stemming from custodial interrogation[.]" *Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. at 1612. Accord *Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *Beckwith v. United States,* 425 U.S. 341, 346, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976) (holding that statements made during noncustodial interview with IRS agent need not be suppressed and confirming that determinative issue is whether suspect is in custody, not whether he is focus of investigation).

In its decision in *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court elaborated upon the meaning of "custodial interrogation." The *Berkemer* Court rejected the contention that *Miranda* rights do not attach until a person is formally placed under arrest. Thus, it was determined that "a motorist who has been detained pursuant to a traffic stop [who] is subjected to treatment that renders him 'in custody' for practical purposes, . . . will be entitled to the full panoply of protections prescribed by *Miranda.*" *Id.* at 440, 86 S.Ct. 1602, 104 S.Ct. at 3151. For purposes of deciding whether a person was "in custody" at a particular time, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id.* at 442, 104 S.Ct. at 3152. *See United States v. Reynolds,* 762 F.2d 489, 493 (6th Cir.1985) (applying the "reasonable man" test of *Berkemer*).

◼ Pursuant to *Miranda,* police must cease interrogation once a defendant in custody has invoked his right to the assistance of counsel until counsel is present. "Interrogation" includes express questioning and its functional equivalent. The Supreme Court in *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980) defined interrogation as "not only . . . express questioning, but also . . . any words or actions on the part of the police that the police should know are reasonably likely to elicit an incrimina-

---

**11.** In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the privilege against self-incrimination extended to state custodial interrogations. In Miranda, the Supreme Court stated that the privilege guaranteed a person under custodial interrogation "the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will,'" *Miranda,* 384 U.S. at 460, 86 S.Ct. 1602, and held that "without proper safeguards the process of in-custody interrogation . . . contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda,* 384 U.S. at 467, 86 S.Ct. 1602. To counter these pressures the Supreme Court prescribed, absent "other fully effective means," the now-familiar measures in aid of a defendant's Fifth Amendment privilege:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.

*Miranda,* 384 U.S. at 479, 86 S.Ct. 1602.

ting response from the suspect." In *Miranda*, the Supreme Court stated that:

[o]ur decision is not intended to hamper the traditional function of police officers in investigating crime.... General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding.... In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.

*Miranda v. Arizona*, 384 U.S. at 477–78, 86 S.Ct. at 1630.

█ *Miranda* prohibits admission of statements obtained through unwarned custodial interrogation. *Miranda* does not prohibit admission of statements obtained through unwarned non-custodial interrogation, or statements volunteered while the defendant is in custody. Obviously, *Miranda* also does not prohibit admission of statements volunteered by the defendant when he is not in custody.

█ The Michigan Court of Appeals found that petitioner was not entitled to *Miranda* warnings before he made his statement to Sergeant Kawa, because he was not in custody or being interrogated when he made his inculpatory statement. Petitioner was seated in his own home when Sergeant Kawa and his partner arrived there and announced that they were investigating a shooting. Then, without being asked any questions, petitioner made his statement. The "two police officers testified that they merely arrived at defendant's apartment and announced that they were investigating a shooting when defendant immediately volunteered his statement." *People v. Johnigan*, 1999 WL 33453395, at *3, Michigan Court of Appeals Docket No. 200601. United States Supreme Court precedent shows that statements which are volunteered to the police when a subject is not in custody or not being questioned do not implicate *Miranda*. The Michigan Court of Appeals ruling that petitioner was not rendered "in custody" by the mere arrival of the police at his apartment and was not subjected to the functional equivalent of interrogation by the mere announcement by the police that they were investigating a shooting were reasonable applications of federal constitutional law.

A stronger argument may be made for the claim that petitioner was "in custody" than for the argument that he was subjected to the functional equivalent of interrogation. However, even if it is assumed that petitioner was "in custody," there is no evidence that he was subjected to interrogation, or its functional equivalent. Therefore, he was not entitled to *Miranda* warnings before he offered his statement to Sergeant Kawa. Consequently, this Court concludes that the Michigan Court of Appeals ruling that petitioner's unwarned statement volunteered to Sergeant Kawa was constitutionally admissible is a reasonable application of federal constitutional law. Accordingly, petitioner's challenge to the admission of his statement made to Sergeant Kawa does not entitle him to habeas relief.[12]

---

**12.** It is also undisputed that petitioner voluntarily offered essentially the same confession at the Detroit police station after he was informed of his *Miranda* rights and voluntarily waived those rights. Consequently, petitioner cannot show that he was prejudiced by the admission of his unwarned confession unless he also can show that his subsequent warned confession should have been suppressed. *See Oregon v. Elstad*, 470 U.S. 298, 318, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Petitioner has not even attempted to make such a showing. This is an additional, alternative, reason why petitioner's challenge to admission of his statement made to Sergeant Kawa does not warrant habeas relief.

## VI. Order

Based upon the foregoing, IT IS OR-DERED that the petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED WITH PREJUDICE.**